UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JIM HARRIS, JR.,                          )
                                          )
            Plaintiff,                    )
                                          )
      vs.                                 )          Case No. 1:15-CV-26 (CEJ)
                                          )
CORIZON, LLC, et al.,                     )
                                          )
            Defendants.                   )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for summary judgment filed by
defendant R. Eric Bessey, D.D.S., and the motion for summary judgment filed by
defendants Ernest W. Jackson, D.D.M., Corizon LLC, Corizon Health, Inc. and
Corizon, Inc. (the "Corizon defendants"). Plaintiff Jim Harris, Jr., has responded in
opposition to both motions, and the issues are fully briefed.

Plaintiff, a Missouri prison inmate, brings this action pursuant to 42 U.S.C. §
1983, claiming that the defendants were deliberately indifferent to his serious
medical needs, in violation of the Eighth Amendment.   Defendant Bessey is an oral
surgeon in private practice who performed surgery on and provided post-operative
treatment to the plaintiff.    At all relevant times, Corizon, LLC was under contract
with the State of Missouri to provide medical and dental care to prison inmates.
Defendant Jackson was Corizon's dental director whose duties included providing
dental services to inmates in the Southeast Correctional Center (SECC).

## I.  Background

In 1995, plaintiff was involved in an automobile accident which resulted in
several fractures to his facial area, including a fractured right mandible.   On

November 24, 1995, plaintiff underwent surgery to repair the facial fractures, which included the fixation of an external plate to his right mandible.  After the surgery, plaintiff developed an infection.  He was admitted to Cook County Hospital from May 20, 1996 to May 28, 1996 for nonunion, osteomyelitis, abscess, and infection of the right mandible.  Plaintiff was treated with antibiotics and it was determined that he was allergic to penicillin.

In 1997, while confined at Centralia Correctional Center, plaintiff received surgery to address continued discharge from the surgical wound; as well as difficulty eating, pain, and infection. As a result of the surgery, the drainage stopped and the infection subsided, but  plaintiff continued to complain of difficulty eating, jaw pain, and a continuing nonunion of the right mandible.

In August 2010, plaintiff was confined in the Pemiscot County Jail where he completed a medical intake form.  On the form, plaintiff reported a history of heart attack and a nervous disorder, but he left blank the section about allergies.  Plaintiff received treatment for his jaw again in August of 2010, after complaining of drainage associated with the infection and worsening pain.  He was administered penicillin and, within two days, plaintiff developed hives and experienced nervousness, swelling, and itching.

Plaintiff was taken to see Dr. Robert Ward, an oral surgeon, on August 27, 2010.  According to Dr. Ward, plaintiff did not report any allergies to medications. Dr. Ward diagnosed plaintiff as having an existing non-union of a right mandible fracture and the temporomandibular joint (TMJ) of the left side of the face. Medication was prescribed, and Dr. Ward recommended that plaintiff undergo surgery on his lower jaw to create a normal union in the jaw.

On July 13, 2012, plaintiff was transferred to the Eastern Reception, Diagnostic Correctional Center (ERDCC). Plaintiff was seen for complaints of soreness in his jaw by Snowber Fazili, a dentist employed by Corizon. Dr. Fazili discussed Dr. Ward's evaluation of plaintiff with defendant Jackson on December 3, 2012. Dr. Jackson reviewed Dr. Ward's evaluation and gave approval for plaintiff to be seen by an oral surgeon.

Plaintiff was transferred to SECC on February 26, 2013. He was referred to defendant Bessey to address ongoing complaints with his jaw. Dr. Bessey performed a clinical examination, reviewed the plaintiff's chief complaints, obtained a health history from plaintiff, and took radiological images at the initial examination. He recommended that plaintiff undergo surgery of the right mandible.

On May 6, 2013, Dr. Bessey performed an open reduction allogenic bone graft with internal fixation of a metal plate. The graft consisted of ground bone obtained from a bone bank that was enhanced with platelets from platelet-rich plasma. On a health history form that plaintiff signed, the response "No" was given to the question whether plaintiff was allergic to penicillin. In his deposition, plaintiff denied making that response and testified that he did report an allergy to penicillin. Dr. Bessey testified that he relied on the information in the health history form. He further testified that he asked plaintiff if he were allergic to any drugs and plaintiff responded that he was not. Dr. Bessey did not try to obtain the medical records that included the plaintiff's initial jaw injury and operation in 1995. Before the surgery, Dr. Bessey ordered intra-operative Clindamycin, an antibiotic. A course of Clindamycin was ordered for plaintiff to continue after surgery. Plaintiff testified

that he told Dr. Bessey that he'd previously been prescribed Clindamycin for an infection and it was ineffective.

On May 7, 2013, plaintiff returned to Dr. Bessey for a follow-up examination. Plaintiff saw Dr. Bessey again on May 14, 2013 with complaints of swelling and pain on the right side of his face. Dr. Bessey told plaintiff to continue taking the Clindamycin for ten days and to rinse with Peridex. When plaintiff returned on May 21, 2013, he again complained of swelling and pain on the right side of his face. Dr. Bessey instructed plaintiff to continue the Clindamycin and Peridex and to return in two weeks to evaluate the healing.

On May 23, 2013, plaintiff saw Dr. Theodore Ostrom, an oral surgeon at SECC. Plaintiff complained about pain in his right jaw and swelling on the right side of his face. Dr. Ostrom diagnosed plaintiff with cellulitis on the right side of the face in the jaw and temporalis area and removed the suture from the surgical wound.

On June 4, 2013, plaintiff presented to Dr. Bessey with complaints of right facial swelling and a bad taste in his mouth. Dr. Bessey noted that there was delayed healing of the repair site, the fixation plate was exposed, and some debris was present. Dr. Bessey continued plaintiff on Clindamycin and Peridex and prescribed ibuprofen for pain.

Plaintiff saw Dr. Ostrom on June 5, 2013, complaining of jaw and chin pain and an "infection taste" in his mouth. *Medical Record* [Doc. 71-10, at p. 65]. Dr. Ostrom instructed plaintiff to continue the course of medication prescribed by Dr. Bessey.

Plaintiff returned to Dr. Bessey on June 25, 2013. Dr. Bessey noted that plaintiff had "been on long term clindamycin without improvement." *Id.* at p. 69. The medical record also shows that plaintiff told Dr. Bessey that "clindamycin was ineffective in [the] past." *Id.* Plaintiff's internal fixation plate was exposed and there was swelling in his right cheek. Dr. Bessey recommended a consultation with an infectious disease specialist, which was approved by Corizon on June 28, 2013. The specialist recommended that plaintiff undergo an MRI which was approved by Corizon on July 10, 2013.

Plaintiff returned to Dr. Bessey for further evaluation on July 19, 2013. During the visit, Dr. Bessey noticed that the surgical wound was more closed and the swelling had diminished. Dr. Bessey obtained and sent out cultures for culture and sensitivity testing. Based on the results, he believed that the infection "was responding to clindamycin [but] it was just very slow." *Bessey depo.* at p. 95 [Doc. 71-3]. Dr. Bessey also learned from the test results that plaintiff had a resistance to Clindamycin. *Id.* p. 96. Consequently, on July 30, 2013, Dr. Bessey, ordered that the Clindamycin be discontinued and prescribed Augmentin, an antibiotic within the penicillin family.

On August 8, 2013, plaintiff complained to Dr. Doyle at SECC that he had nausea and vomiting, and thought he was allergic to the antibiotic he was taking. At Dr. Bessey's direction, Dr. Doyle changed plaintiff's prescription to penicillin. On August 13, 2013, Dr. Bessey again recommended that plaintiff see an infectious disease specialist.

On August 17, 2013, plaintiff went to the SECC infirmary complaining of an allergic reaction to penicillin. Upon examination, a nurse observed that plaintiff had

marked facial swelling and hives on his arms and buttocks.  He was given Benadryl and remained in the infirmary overnight.  Suspecting that plaintiff's hives were caused by the penicillin, a doctor at SECC ordered that penicillin be discontinued.  On August 25, plaintiff complained of an itching and burning rash that he believed was caused by penicillin.  Medical personnel at SECC examined him and prescribed Benadryl and prednisone

On August 26, 2013, Corizon approved the request for a referral to an infectious disease specialist.  Plaintiff was seen by the specialist, Lorenzo McKnelly, D.O., on September 3, 2013.  Dr. McKnelly noted the "ongoing infectious process" and recommended that the plate be removed from plaintiff's jaw if possible to help address the infection.  [Doc. # 71-13, p. 34].

On October 29, 2013, Dr. Bessey removed the metal plate from plaintiff's right mandible.  He prescribed Tylenol III and Motrin for pain.  Plaintiff was seen by Dr. Doyle at SECC on November 6, 2013.  Dr. Doyle found that the surgical site seemed to be healing.  When plaintiff saw Dr. Bessey on November 19, 2013 it was noted that, although plaintiff had some swelling in the right cheek, the surgical site was closed and there was no drainage and no active infection.

Plaintiff was seen by Dr. Doyle at SECC on December 19, 2013.  Plaintiff stated that the draining and infection were all gone, but that his TMJ on the left side of his face was uncomfortable from time to time.  Plaintiff also stated that he still had severe pain in the lower right jaw from time to time. Dr. Doyle instructed plaintiff to follow-up with Dr. Hakala for reevaluation of the pain and prescription for pain medication.  Dr. Doyle noted that the surgical site looked closed and was healing within normal limits.  Dr. Doyle told plaintiff that he would request that

plaintiff see a neurologist for complaints of right-sided jaw pain, an x-ray for complaints of left-sided TMJ, and that plaintiff return to Dr. Bessey for continued evaluation. On December 23, 2013, Dr. Jackson approved Dr. Doyle's request for plaintiff to be seen by Dr. Bessey.

Plaintiff was seen by Dr. Bessey on January 14, 2014, for reevaluation of the healing of the mandible's nonunion, evaluation of the left-sided TMJ pain and dysthesia of the right jaw. Dr. Bessey stated that he would refer plaintiff for an evaluation by neurology for evaluation of the dysthesia. Dr. Bessey also stated that plaintiff needed a hard acrylic night-guard for the TMJ.

On January 29, 2014, plaintiff told Dr. Doyle that Dr. Bessey was going to contact Dr. Jackson for approval for a night-guard and referral to a neurologist. Dr. Doyle noted that the surgery site on the right mandible looked good.

On February 7, 2014, plaintiff complained that his right jaw was swollen and infected and he was given Clindamycin. On February 10, 2014, plaintiff was seen by Dr. Doyle, who determined that plaintiff's swelling appeared to be in the normal range. On February 18, 2014, plaintiff was seen by Dr. Mina Massey, a Corizon physician at SECC, for multiple complaints of bodily pains, including arthritis, hips, knees, back, and chronic facial pain. Because of his multiple complaints of pain, Dr. Massey discontinued the Naproxen and Motrin, and started plaintiff on ibuprofen.

On February 24, 2014, Dr. Jackson spoke with Dr. Bessey to discuss whether plaintiff needed a neurology consultation and a hard acrylic night-guard. On February 26, 2014, Dr. Jackson approved plaintiff for a night-guard as recommended by Dr. Bessey. Dr. Bessey and Dr. Jackson's recommendation for a

neurology consultation was not approved because plaintiff had just started a different pain medication protocol.

On March 5, 2014, plaintiff complained that his right cheek was draining. That same day, Dr. Doyle and Dr. Campbell (Corizon's interim regional medical director) discussed Dr. Bessey's recommendation for a referral to a neurologist. During the conversation between Dr. Doyle and Dr. Campbell, it was decided to consult Dr. Massey for enrollment of plaintiff in a pain management clinic. After consulting with Dr. Doyle, on March 5, 2014 Dr. Massey agreed to provide plaintiff with reevaluation and a treatment plan, to treat plaintiff as a pain clinic patient and to address plaintiff's oral drainage.

On March 13, 2014, plaintiff saw Dr. Doyle and told him that he was proceeding with a lawsuit against the practitioners who treated his jaw injury. Plaintiff stated that the personnel at the SECC dental clinic had taken good care of him, and that he had instructed his attorney not to include them in any lawsuits. Dr. Doyle told plaintiff that a dental practitioner was being sought to evaluate his TMJ and make an appliance.

On April 9, 2014, plaintiff saw Dr. Massey, complaining of chronic pain and swelling, occasional draining from the right mandible and that his fracture had not healed. Dr. Massey assessed plaintiff as having chronic osteomyelitis in the right mandible with nonunion fracture and prescribed antibiotics. On April 30, 2014, plaintiff saw Dr. Massey and reported that he was still having pain during the day and that his face was more swollen on the right mandible baseline. Dr. Massey prescribed oral vancomycin for 30 days to see if it would help with the pain and swelling.

On May 6, 2014, Dr. Doyle requested approval for plaintiff to see Dr. Ervin Simmons, an oral surgeon, for a panoramic x-ray and TMJ evaluation at ERDCC. Dr. Jackson approved the request on May 7, 2014. On June 10, 2014, Dr. Simmons examined plaintiff and assessed a clinical and radiographic appearance of a possible nonunion and that plaintiff had mild clicking from right TMJ. Dr. Simmons advised Dr. Doyle that he could not see plaintiff for a TMJ evaluation because he was not a TMJ specialist.

Dr. Doyle requested approval from Dr. Jackson on June 10, 2014 for plaintiff to be seen by Dr. Pernoud, an oral surgeon for a TMJ evaluation. On June 26, 2014, plaintiff was sent to Dr. Pernoud's office but was not seen because Dr. Pernoud needed to do the evaluation in a hospital setting. On September 4, 2014, when Dr. Jackson attempted to schedule a TMJ evaluation with Dr. Bessey, he was told that Dr. Bessey did not want to treat plaintiff because plaintiff had named him in a lawsuit.

On September 11, 2014, plaintiff was approved to see Dr. Reese Thompson, an ear, nose, and throat physician, for constant complaints of pain in the TMJ area. Dr. Thompson saw plaintiff on October 2, 2014. Dr. Thompson diagnosed plaintiff with TMJ pain and dysfunction and found that plaintiff's options were probably limited but recommended that plaintiff follow-up with Dr. Bessey for reevaluation if the symptoms persisted. Dr. Terrence Fowler, a dentist at SECC, has provided dental treatment to plaintiff since March 2015.

## II. __Legal Standard__

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

### III.  Discussion

"It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir.2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison [officials] in intentionally denying or delaying access to medical care or

intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

To prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir.1997) (citing *Choate v. Lockhart,* 7 F.3d 1370, 1373 (8th Cir.1993)). In order to succeed in a deprivation of medical care case, an inmate must show both that he had an objectively serious medical need and that the prison official knew of and was deliberately indifferent to the inmate's serious medical needs. *Id.* (citing *Miller v. Schoenen,* 75 F.3d 1305, 1309 (8th Cir.1996) and *Camberos v. Branstad,* 73 F.3d 174, 175 (8th Cir.1995)). Each step of a deliberate indifference inquiry is fact-intensive and involves both an objective and subjective analysis. *Id.*; see also *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir.2014).

**A. <u>Serious Medical Need</u>**

In evaluating the objective component of a prisoner's Eighth Amendment claim, the Eighth Circuit has held that a serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad,* 73 F.3d at 176. Plaintiff's claim arises from an on-going issue with his jaw, that several physicians have observed and determined required various forms of treatment. Plaintiff's right mandible injury is an objectively serious medical need because he has been diagnosed by multiple physicians as requiring treatment. Both Dr. Bessey and the Corizon Defendants were aware of plaintiff's

need for treatment of his right mandible.  The Court finds sufficient evidence to conclude plaintiff has an objectively serious medical need for his right mandible.

When an inmate alleges that the delay in treatment is the constitutional depravation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir.1997).  Moreover, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to show that the delay caused or exacerbated an objectively serious medical need." *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995) (adopting this standard); *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir.1997) (summary judgment properly entered for the defendants where the plaintiff failed to submit verifying medical evidence that delay in providing sunglasses further damaged his eye); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir.1997) (no harm shown from delay in treatment); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir.1994) (did not produce evidence that the delay in receiving medical care adversely affected the prisoner's prognosis).

Plaintiff has presented evidence in the record demonstrating that his alleged deprivation of treatment resulted in continued facial swelling and lack of healing due to infection by the Corizon Defendants.  Plaintiff also alleges that although continuing to take the antibiotics prescribed to him, he would wake with blood and infection stains on his pillow case.  Further, on June 16, 2013, plaintiff filed a medical services request because his pain began to increase, his facial swelling continued, and his soreness grew dramatically.  At a minimum, viewing this

evidence in the light most favorable to the non-moving party, plaintiff has presented enough evidence to support a conclusion that the delay in treating his infection exacerbated an objectively serious medical need.

Plaintiff also complains that evidence suggests Dr. Bessey knew or had substantial reason to know, an infection existed in or around plaintiff's jaw prior to and immediately after surgery. A prison official is culpable for deliberate indifference to that serious medical need if the official is "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually draws that inference. *Bender v. Regier,* 385 F.3d 1133, 1137 (8th Cir.2004). Plaintiff presented to Dr. Ward and then Dr. Bessey with complains of jaw soreness and an existing non-union of the right mandible fracture and the temporomandibular joint, plaintiff did not present complains of an infection. Based upon the record evidence, however it does not appear as if Dr. Bessey was presented with facts from which the inference could be drawn that a substantial risk of serious harm existed as it pertains to an infection around plaintiff's jaw. *See e.g.,* Hamilton v. Grubbs, No. 4:14-CV-766-CEJ, 2017 WL 264511, at *6 (E.D. Mo. Jan. 20, 2017) (finding the evidence insufficient for a reasonable jury to conclude the defendant knew plaintiff's condition was serious when the condition was not longstanding, pervasive, well-documented, or expressly noted in the medical record). Further, there is no evidence in the record showing that an infection existed at the time the surgery had occurred. Here, even viewing this evidence in the light most favorable to the non-moving party, plaintiff has not presented enough evidence to show that Dr. Bessey was aware of facts from which an

inference could be drawn to support the conclusion that an infection existed in or around plaintiff's jaw.

Plaintiff further alleges that Dr. Bessey and the Corizon Defendants prescribed penicillin despite evidence that he was allergic. Plaintiff was found to be allergic to penicillin while undergoing treatment at Cook County Hospital in 1995. Corizon admits that plaintiff's prior medical records indicated that he was allergic to penicillin upon being incarcerated within MDOC in 2003. However, plaintiff had indicated that he was not allergic to any medications on a mental and dental history form, and later indicated that he was not allergic to penicillin and had no drug allergies. Corizon also states that medical records from previous incarcerations in MDOC are reviewed when an offender is unsure of an answer to a question, or is unable to answer a question about his medical history upon reception by MDOC. The official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and actually draw that inference. *Bender*, 385 F.3d at 1137. Here, Corizon should have been aware that plaintiff was allergic to penicillin, as they had medical records indicating as such.

Dr. Bessey presents that he had no way of knowing that plaintiff was allergic to Penicillin because plaintiff denied any drug allergies when asked before his surgery. When treating plaintiff for the same condition, Dr. Ward also did not review any of plaintiff's medical records. Dr. Bessey did not further inquire about plaintiff's medical history, nor did he seek to obtain plaintiff's prior medical records because he felt they were unnecessary to treat plaintiff's medical issues. However, the record is also clear that plaintiff failed to note on the medical records he provided to Dr. Bessey that he suffered an allergy to penicillin. Plaintiff has not

presented evidence that Dr. Bessey was aware of his allergy to penicillin. Plaintiff informed the medical team at the prison and at the hospital that he was not allergic to any drugs. In order for Dr. Bessey to be deliberately indifferent to a serious medical need, he must first be aware of it. Here, the court has been presented no evidence that Dr. Bessey was made aware that plaintiff was actually aware of plaintiff's allergy. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir.2009) (requiring a plaintiff to show that the defendant actually know of the serious medical need).

**B. Deliberate Indifference**

Deliberate indifference is equivalent to criminal-law recklessness, which is "more blameworthy than negligence," yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate. *See Farmer,* 511 U.S. at 835, 839–40, 114 S.Ct. 1970. An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate. *Lenz v. Wade,* 490 F.3d 991, 995 (8th Cir.2007). Deliberate indifference must be measured by the official's knowledge at the time in question, not by "hindsight's perfect vision." *Id.* at 993 n. 1 (quoting *Jackson v. Everett,* 140 F.3d 1149, 1152 (8th Cir.1998)).

Allegations of medical malpractice, inadvertent failure to provide adequate medical care, or simple negligence do not amount to a constitutional violation. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Popoalii v. Correctional Med. Servs.,* 512 F.3d 488, 499 (8th Cir.2008); *Smith v. Clarke,* 458 F.3d 720, 724 (8th Cir.2006). Rather, the standard is met when the complainant establishes that the official "intentionally den[ied] or delay[ed] access to medical care, or intentionally interfer[ed] with treatment or medication that has been prescribed." *Vaughan v.*

*Lacey,* 49 F.3d 1344, 1346 (8th Cir.1995). Furthermore, "prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment," since prisoners do not have a right to any particular course of medical care. *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996) (citing *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir.1994)); *Taylor v. Turner,* 884 F.2d 1088, 1090 (8th Cir.1989).

### 1. Dr. Bessey

Plaintiff, in both Count I and Count II, asserts claims under 42 U.S.C. § 1983, claiming the Dr. Bessey violated Plaintiff's constitutional rights under the Eighth Amendment. Dr. Bessey argues that he did not violate plaintiff's constitutional rights, but instead acted appropriately as a medical professional and was not deliberately indifferent to plaintiff's medical needs.

### a. Bone Graft Surgery

Plaintiff complains that Dr. Bessey demonstrated deliberate indifference to his serious medical needs by proceeding with an ineffective surgical procedure. Specifically, plaintiff asserts that the allogenic bone graft that Dr. Bessey performed was less effective than an autogenic bone graft harvested from plaintiff's hip.

Treatment decisions are made using independent medical judgment. *See Estelle,* 97 U.S. at 107. "Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs." *Davis v. Hall,* 992 F.2d 151, 153 (8th Cir.1993); *see also Jones v. Norris*, 310 F.3d 610, 612 (8th Cir.2002)(differences of opinion with respect to medical treatment do not state an actionable Constitutional violation). Here, plaintiff's disagreement is not with the decision to perform the surgery, but rather the type surgery that was performed.

Even when a prison physician has failed to follow the recommendations of outside specialists, such does not constitute deliberate indifference if the doctor used his 'independent professional judgment' when choosing the particular course of treatment." *Dulany v. Carnahan,* 132 F.3d 1234, 1241 (8th Cir.1997).  In this case, Dr. Bessey did not display deliberate indifference by proceeding with the allogenic bone graft surgery.  Evidence that another doctor would have performed a different type of graft is not sufficient to support an Eighth Amendment claim.  "The existence of a possible alternate course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm." I*d.*    The record is also devoid of any evidence suggesting this course of treatment "so deviated from professional standards that it amounted to deliberate indifference." *Id.* at 1243.    Finally, plaintiff has presented no evidence supporting his allegation that Dr. Bessey's decision to perform the allogenic bone graft was motivated by financial concerns.

### b.    Antibiotics

There is no disagreement that the Clindamycin antibiotic prescribed by Dr. Bessey was ineffective in treating plaintiff's post-operative infection.   In the three-month period immediately following the surgery, plaintiff saw Dr. Bessey multiple times, each time presenting with symptoms of infection.   In June 2013, Dr. Bessey noted that plaintiff's infection was not responding to clindamycin and plaintiff reported that the antibiotic had been ineffective in the past.   Nevertheless, Dr. Bessey continued to prescribe Clindamycin for another month before switching to a different antibiotic.    Whether Dr. Bessey unreasonably delayed prescribing an

effective antibiotic constitutes deliberate indifference presents a genuine material fact dispute to be resolved by a jury.

Likewise, plaintiff's claim with respect to the penicillin prescribed by Dr. Bessey cannot be resolved on a motion for summary judgment. Plaintiff claims that Dr. Bessey was deliberately indifferent by prescribing penicillin, either because he knew of and disregarded plaintiff's allergy to it or because he failed to review medical records that would have shown plaintiff's allergy to the drug. The parties do not agree on whether plaintiff was in fact allergic to penicillin and there is contradicting testimony as to whether plaintiff reported a penicillin allergy to Dr. Bessey. Thus, there is a genuine issue of material fact that precludes summary judgment.

### c. <u>Metal Plate Removal</u>

Plaintiff alleges that Dr. Bessey demonstrated deliberate indifference by performing surgery to remove the metal plate in his office instead of in a hospital. Plaintiff points to Dr. Ward's expert report in which he states that "when an infection develops at a mandibular fracture or non-union, the patient should be treated in a hospital setting, where the wound can be cleaned, the patient can be administered oxygen, antibiotics, and a proper culture can be implemented. [Doc. #68-9, pg. 1]. Neither party has presented evidence as to whether Dr. Bessey's office met the standard of a "hospital setting."

Medical treatment that is so inappropriate as to demonstrate a refusal to provide essential care violates the Eighth Amendment. *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir.1997). There is no evidence here that the choice to perform the surgery in Dr. Bessey's office was so inappropriate as to constitute a

refusal to provide essential care.  Further, a healthcare provider need not accept as true medical judgments offered by their patients but must make treatment decisions on the basis of many factors, only one of which is patient's input. *Allard v. Baldwin*, 779 F.3d 768, 772–73 (8th Cir.), *cert. denied,* 136 S. Ct. 211 (2015) (citing *Givens v. Jones,* 900 F.2d 1229, 1232 (8th Cir.1990). Plaintiff does not have a constitutional right to any particular location for treatment.  *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996).  Plaintiff has submitted no evidence supporting the claim that Dr. Bessey was deliberately indifferent by performing the metal plate removal in his office.  Therefore, summary judgment will be granted in defendant Bessey's favor on this issue.

### 2. <u>Corizon Defendants</u>

In Count I and Count II, plaintiff asserts that the Corizon defendants violated the Eighth Amendment by failing to administer effective antibiotics, delaying dispersing antibiotics, failing to refer plaintiff to appropriate medical professionals, and by maintaining a policy, practice or custom of deliberate indifference towards inmates.  Defendants assert  that plaintiff's § 1983 claims against them fail because he failed to exhaust his administrative remedies and because the medical treatment he received was adequate under the law.

### a. <u>Failure to Exhaust Administrative Remedies</u>

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, a prisoner is required to exhaust available administrative remedies as a prerequisite to bringing an action under 42 U.S.C. § 1983.  Absent exhaustion, a court cannot consider a prisoner's claims.  *Jones v. Bock*, 549 U.S. 199, 220, 127 S. Ct. 910, 923, 166 L. Ed. 2d 798 (2007).  The Corizon defendants argue that plaintiff did not

exhaust his claims based on allegations of delay in the administration of antibiotics and in the referral to an infectious disease specialist.

The evidence shows that plaintiff filed an Internal Resolution Request (IRR) in which he complained of being denied appropriate medical care.  In the IRR, plaintiff alleged that the Corizon defendants "delayed or cause[d] delay in getting me to the proper physician to obtain adequate treatment." [Doc. #71-23, pg. 6]. He also requested that "something [be] done about this pain and infection, as it pose [sic] an excessive risk to my health."  *Id.* While the claims of delay in providing  antibiotics  or  referral to   an infectious  disease specialist  are not specifically mentioned, the Court finds that those claims are encompassed by the allegations set forth in the IRR.   Thus, plaintiff's use of the prison's internal grievance system to seek redress satisfied the PLRA's exhaustion requirement.

### b. <u>Failure to Administer Effective Antibiotics</u>

Because the issue of Clindamycin has already been addressed, the court will discuss allegations that Corizon Defendants were deliberately indifferent in prescribing penicillin. Plaintiff alleges the Corizon Defendants were aware that plaintiff was allergic to penicillin.  Plaintiff states that he had informed Corizon and their agents about his penicillin allergy and their collective failure to not prevent the prescription of a harmful antibiotic amounted to deliberate indifference to his medical needs.  Corizon argues that plaintiff is without any supporting evidence to substantiate his allegations that the choice of the antibiotics was inappropriate. Corizon acknowledges that while plaintiff was incarcerated with MDOC in 2003, plaintiff advised medical staff that he was allergic to penicillin.  However, upon plaintiff's re-entry to MDOC in 2012, plaintiff denied being allergic to any

medications. Corizon states that previous medical record entries are only consulted if an offender is unsure of an answer to a question. At best, plaintiff has shown that Corizon should have known that they were committing medical malpractice by prescribing penicillin – however medical malpractice does not rise to the level of deliberate indifference. *See Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 388–89 (8th Cir.2014) (finding medical malpractice not rising to the level of deliberate indifference when physicians failed to prescribe medicine to address serious medical need). Relying on plaintiff's own purported medical history and not referencing Corizon's own medical records amounts to no more than medical malpractice, not sufficient to meet the deliberate indifference standard. *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir.1999). Therefore, summary judgment will be granted in defendants' favor on this issue.

### c. <u>Delay in Dispersing Antibiotics</u>

For the reasons set forth above with respect to defendant Dr. Bessey, the Court finds that there are material fact disputes that preclude entry of summary judgment on the plaintiff's claim that the defendants delayed in dispersing effective antibiotics and that they administered penicillin to him knowing that he was allergic to it. Therefore, the Corizon defendants are not entitled to summary judgment on these claims.

### d. <u>Failure to Refer to Appropriate Medical Professionals</u>

Plaintiff states that he made repeated complaints about nerve damage, abnormal headaches, blurred vision, and unbearable pain, which the Corizon defendants failed to address by referring plaintiff to the appropriate medical professional in a timely manner. Plaintiff alleges that Dr. Jackson and Corizon

refused to send him to a neurologist for his pain, as recommended by Dr. Bessey. In March 2013 and in January 2014. Also, it is undisputed that neurology recommendations were made by Dr. Doyle and Dr. McKnelly. The medical records show that plaintiff's request to see a neurologist was denied because it was decided that he would be placed on a more intensive pain medication program. [Doc. #71-11, p. 131].

A prison inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded his needs by denying access to appropriate medical professionals. *Nelson v. Shuffman*, 603 F.3d 439, 448–49 (8th Cir.2010) (citing *Meuir v. Greene County Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir.2007)). Here, the evidence is that Corizon made a decision about the way to treat plaintiff's pain that differed from the recommendation that he see a neurologist. This does not rise to the level of deliberate indifference to plaintiff's medical needs. *See Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir.2000) (disagreeing with a physician's course of treatment does not rise to the level of an Eighth Amendment violation).

### e. **Policy of Deliberate Indifference**

Plaintiff alleges that Corizon maintains a policy, practice, or custom of deliberate indifference to the serious medical needs of inmates by denying or delaying medical treatment and referral to appropriate specialists and by failing to timely administer vital medications to inmates. Plaintiff has not presented any evidence supporting this allegation.

\* \* \* \* \*

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the separate motions for summary judgment filed by defendant Dr. R. Eric Bessey [Doc. #66] and by defendants Ernest W. Jackson, D.D.M., Corizon LLC, Corizon Health, Inc. and Corizon, Inc. [Doc. #69] are **denied** with respect to plaintiff's claim of delay in prescribing and administering effective antibiotics and claim of disregarding plaintiff's allergy to penicillin asserted in Counts I and II.

**IT IS FURTHER ORDERED** that the defendants' motions for summary are **granted** with respect to all other claims asserted in Counts I and II.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of March, 2017.